UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00440-RJC

| | |
|---|---|
| TIFFANY STEVENS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WELLS FARGO BANK, )<br>)<br>Defendant. )<br>)<br>) | **Order** |

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (DE 13). The Court has reviewed the pleadings, filings, exhibits thereto, and applicable law and has considered the parties' arguments. For the reasons stated herein, Defendant's Motion to Dismiss is **GRANTED**.

**I.     BACKGROUND**

Plaintiff Tiffany Stevens ("Stevens") filed a charge with the Equal Employment Opportunity Commission ("EEOC") on March 18, 2019, alleging discrimination under the Americans with Disabilities Act ("ADA") against her former employer, Defendant Wells Fargo Bank ("Wells Fargo"). (DE 5 at 6, 13). The alleged discrimination occurred from October 1, 2018 to March 14, 2019 and was based solely on a disability. (*Id.*). In the EEOC charge, Stevens provided the following details of her alleged discrimination. (*Id.* at 13).

- Stevens' job duties as an Operations Clerk II required lifting heavy objects and walking for extended periods.

- Stevens' is "an individual with a disability and a physical impairment which substantially effects a major life function."

- Stevens' took a medical leave of absence from March 2018 to July 2018 after her physical impairment required her to seek treatment and possible surgery.

- After July 2018, Stevens returned to work with medical restrictions for an eight-hour shift and "was accommodated and placed in a vacant teller position."

- In October 2018, Wells Fargo informed Stevens' that she could no longer be accommodated and needed to return to her regular job duties.

- Beginning in October 2018, Stevens' was forced to take an unpaid leave of absence until July 2018 because she "was unable to return to [her] original job duties."

- On March 14, 2019, Stevens' manager at Wells Fargo informed her that she would be terminated if she did not return to work by April 1, 2019.

Stevens was terminated from employment on May 29, 2019, over two months after she filed the EEOC charge. (DE 5-1 at 63). Stevens only claim in the charge was disability discrimination for failure to accommodate in violation of the ADA. (DE 5 at 13).

After reviewing the charge, the EEOC was unable to conclude a violation occurred and issued a Right to Sue ("RTS") Notice to Stevens which stated "[y]our lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost." (*Id.* at 15). Stevens received the RTS Notice on March 5, 2020. (*Id.* at 6). Stevens filed the Complaint in the instant case on August 10, 2020, sixty-eight days after the deadline (158 days after receiving the RTS Notice). (DE 1). Stevens also filed a Motion of Continuance with her Complaint requesting the Court to allow the untimely filing. (DE 3).

On August 21, 2020, this Court dismissed Stevens' Complaint for failure to state a claim with leave to file an Amended Complaint and denied Stevens' Motion for Continuance with leave for Stevens to "address the 90-day filing requirement in her Amended Complaint and, if applicable,

at later stages in the proceedings." (DE 4). Stevens' Amended Complaint was completed on the Pro Se 7 form. (DE 5). The Pro Se 7 form informs plaintiffs that "[o]nly those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes." (*Id.* at 5). In the Amended Complaint, Stevens listed the following discriminatory actions: "Termination of my employment;" "Failure to accommodate my disability;" "Unequal terms and conditions of my employment;" "Retaliation;" and "Other acts (specify): Invasion of privacy & mishandling of records." (DE 5 at 13, 5). The discrimination allegedly occurred between January 2018 and September 2019. The alleged disability was "Mental Disorder and Fracture Ankle." (*Id.* at 5).

In the Amended Complaint, Stevens' noted that in March 2018 she took a medical leave of absence due to "work related Anxiety, Depression, and physical stress to the body." (*Id.* at 10). Stevens' also listed a posterior malleolus right ankle fracture as a disability that was caused by "repeated walking, standing, pulling, and pushing." (*Id.* at 11). Stevens further stated that she failed to file the original Complaint within the 90-day statutory period because of general COVID-19 concerns, mainly mandatory lock-downs, government closures, and precautionary measures.[1] (*Id.*).

## II. STANDARD OF REVIEW

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim is well known. FED. R. CIV. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6) 'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)." *Fannie Mae v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015)

---

[1] Stevens notes a desire to protect her teenage twins who suffer from a respiratory condition. (DE 15 at 1).

(quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means allegations that allow the court to draw the reasonable inference that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Additionally, when ruling on a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed." *Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

Wells Fargo's Motion to Dismiss asserts (1) that the claims should be dismissed as untimely as the Complaint was filed outside the statutory limitations period, (2) that the retaliation and termination claims should be dismissed as exceeding the scope of the EEOC charge, and (3)

4

that the disability discrimination and retaliation claims lack sufficient support. (DE 14). As explained below, the Court finds that the Complaint was filed outside the statute of limitations and dismisses the claims accordingly. The Court declines ruling on Wells Fargo's other arguments which are mooted in light of the untimely filing.

### A. Statute of Limitations

A plaintiff must file her complaint in federal court within ninety days "after the giving of [] notice" by the EEOC. 42 U.S.C. § 2000e-5(f)(1). Notice is accomplished when plaintiff receives the RTS letter from the EEOC. *See generally Dunbar v. Food Lion*, 542 F. Supp. 2d 448, 450–51 (D.S.C. 2008) (noting 90-day period begins running with receipt of the RTS letter and, when that period is in dispute or unknown, delivery is presumed three days after mailing). The Fourth Circuit has held that a filing one day outside the 90-day statute of limitations is time barred and may be grounds for dismissal. *Harvey v. New Bern Police Dep't*, 813 F.2d 652, 653 (4th Cir. 1987); *Dixon v. Digital Equip. Corp.*, 976 F.2d 725, 1992 WL 245867 (4th Cir. 1992) (per curiam, unpublished) (dismissing suit and rejecting equitable tolling where *pro se* plaintiff filed suit one day late). Here, Stevens filed her Complaint 158 days after receipt of the RTS Notice, which is sixty-eight days after the statute of limitations period. Her Complaint is thus time barred. However, an untimely filing can be revived should equitable tolling apply. *Zipes v. TWA*, 455 U.S. 385, 392–94 (1982).

### B. Equitable Tolling

Equitable tolling applies only in very limited situations where there are "(1) extraordinary circumstances, (2) beyond [Plaintiff's] control or external to [her] own conduct, (3) that prevented [her] from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003); *Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002) ("Any invocation of equity to relieve the strict

application of a statute of limitations must be guarded and infrequent, lest circumstances of individual hardship supplant the rules of clearly drafted statutes."). Stevens argues in general terms that the pandemic and its associated shutdowns and interruptions are extraordinary circumstances that justify equitable tolling. (DE 15 at 1). Stevens also notes that her children are at higher risk of infection due to a respiratory condition. (*Id.*). Wells Fargo argues that Stevens failed to plead any particularized facts which show how the pandemic personally prevented her from filing within the three-month window. (DE 16 at 3).

The Court understands that the COVID-19 pandemic has greatly impacted all Americans and is sympathetic to those harmed by the virus. While the Court is unaware of Fourth Circuit controlling precedent, courts in the Fourth Circuit have tended to find that the pandemic alone, absent circumstances of individualized hardship, is insufficient to toll the statutory limitations period. *Compare Gerald v. Mann & Hummel*, No. 4:20-cv-2556-CMC, U.S. Dist. LEXIS 43886, at *7–8 (D.S.C. Mar. 9, 2021) (generalized COVID-19 concerns fail to toll statutory period), *and Willard v. Indus. Air*, No. 1:20-CV-00823, U.S. Dist. LEXIS 17216, at *13–14 (M.D.N.C. Jan. 29, 2021) (same), *and Gerald v. Olsten*, No. 4:20-cv-2555-CMC, U.S. Dist. LEXIS 48021, at *7–8 (D.S.C. Mar. 15, 2021) (same), *and Reed v. GrandSouth Bank*, No. 2:21-cv-00348-MBS, U.S. Dist. LEXIS 203210, at *9–13 (D.S.C. Oct. 21, 2021) (same), *and Bruce v. Stonemor Partners L.P.*, No. RDB-21-0745, U.S. Dist. LEXIS 131186, at *8–10 (D. Md. July 14, 2021) (same), *and Drummond v. Braithwaite*, No. 4:20-CV-238-FL, U.S. Dist. LEXIS 104226, at *10–13 (E.D.N.C. June 3, 2021) (same); *with Kumar v. First Abu Dhabi Bank USA N.V.*, No. ELH-20-1497, U.S. Dist. LEXIS 212021, at *14 (D. Md. Nov. 13, 2020) (statutory period tolled when complaint, which was timely mailed, was delayed due to post office backlog caused by the pandemic), *and Moore v. City of Charlotte*, No. 3:20-CV-525-GCM, U.S. Dist. LEXIS 31964, at *8–9 (W.D.N.C.

Feb. 22, 2021) (equitable tolling applied when the pandemic caused plaintiff mailing delays and hindered attempted service of process).

Here, Stevens does not allege any particularized facts which show how the pandemic personally prevented her from filing within the three-month window. During the entire three-month window, the courthouse remained fully operational[2], there was a drop box outside for receiving filings, and Stevens had the option of mailing her complaint. Stevens lack of diligence and singular reliance on generalized COVID-19 concerns, absent any individual hardship facts, vitiates her equitable tolling argument.

### IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint, (DE 13), is **GRANTED**.

**SO ORDERED**.

The Clerk is directed to close this case.

Signed: December 30, 2021

Robert J. Conrad, Jr.
United States District Judge

---

[2] While the Court briefly had adjusted hours of operation, it was never closed.